IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Tony E. Hornsby,  )<br>  )<br>       Plaintiff,  )<br>  )<br>vs.  )<br>  )<br>Michael J. Astrue,  )<br>Commissioner of Social Security,  )<br>  )<br>       Defendant.  )<br>_____ ) | Civil Action No. 8:07-3474-PMD-BHH<br><br>**REPORT AND RECOMMENDATION<br>OF MAGISTRATE JUDGE** |

This case is before the Court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff, Tony E. Hornsby, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration regarding his claim for Disability Insurance Benefits ("DIB") under the Social Security Act.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

The plaintiff was 57 years old as of the Administrative Law Judge's (ALJ) decision. (R. at 31-32.) He has a tenth grade education (R. at 68), and has worked as an automatic door installer, meat cutter, and meat cutter foreman/supervisor. (R. at 63, 71-80, 83-90, 304-05). He claims he became disabled on July 1, 2004, (R. at 293)[2] due to scapula damage, thoracic nerve damage, pain, and weakness in his right arm. (R at 62, 94.)

The plaintiff filed his application for DIB on August 12, 2004. (R. at 31-32.) The plaintiff's application was denied initially and upon reconsideration. (R. at 31-32, 45-47, 50-54.) At the plaintiff's request, an ALJ conducted a hearing on November 22, 2006, at which

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

[2] This is the onset date amended at the hearing on July 1, 2007.

plaintiff, his representative and a vocational expert were present. (R. at 43-44, 289-316.) On March 6, 2007, the ALJ issued an unfavorable decision, finding the plaintiff was not disabled. (R. at 12-24.) The Appeals Counsel denied the plaintiff's request for review (R. at 5-8, 11), thereby making the ALJ's decision the Commissioner's final decision for purpose of judicial review.

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since July 1, 2004, the established onset date (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. The claimant has the following severe impairments: winging of the right scapula (with a long thoracic nerve palsy); and anxiety-related disorder (20 CFR 404.1520(c)) .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to: perform work at the medium exertional level; is unable to climb using ladders, ropes or scaffolds; no overhead reaching with the right-dominant upper extremity; no pushing or pulling with the right upper extremity in excess of 15 pounds; no exposure to workplace hazards such as unprotected heights and dangerous machinery; due to anxiety is limited to simple, routine, unskilled work, with low stress which is defined as involving very few decisions; and no on-going interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 28, 1949 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education and work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566.

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July , 2004, through the date of this decision (20 CFR 404.1520(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. §423(a). "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

42 U.S.C. §423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. §404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. Social Security Ruling ("SSR") 82–62. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. §423(d)(5). He must make a prima facie showing of disability by showing he is unable to return to his past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir.1966).  Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.  *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed.  *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

**DISCUSSION**

The plaintiff contends that the ALJ erred in failing to find him disabled. Specifically, the plaintiff alleges that the ALJ erred in (1) failing to reconcile inconsistencies between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles; (2) failing to properly assess the plaintiff's credibility; and (3) failing to give proper weight to the opinions of his treating physician. The plaintiff's three objections all reiterate the central concern of the plaintiff that the ALJ improperly found him capable of performing medium work. Medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c). The plaintiff believes that the evidence portends of no other conclusion than he is limited to light work, based on his inability to lift any significant weight. The import of this dispute lies in the fact that the plaintiff would presumably be considered disabled under the Medical Vocational Guidelines ("Grid Rules") were he only capable of performing light work. *See* 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.02.

The Court will address the first two alleged errors in turn and then all three taken together.

**I.    CONFLICT WITH THE DICTIONARY OF OCCUPATIONAL TITLES**

The plaintiff first argues that the jobs of "assembler" and "bench hand," described by the VE as jobs the plaintiff could perform based on his limitations, are, in fact, not consistent with the descriptions given those jobs in the Dictionary of Occupational Titles, ("DOT") Revised, U.S. Department of Labor. Specifically, the plaintiff argues that the ALJ's hypothetical to the VE limited the plaintiff to ***unskilled medium*** work (R. at 310) but that neither of the jobs identified by the VE met those criteria. First, the plaintiff emphasizes that the assembler job is defined in the DOT as ***light*** not medium work. DOT 729.684-054. Second, the plaintiff emphasizes that the bench hand job, while medium work, is skilled rather than unskilled work. DOT 520.384-010. As stated, the problem caused by these discrepancies rests in the fact that the plaintiff is of advance aged with a limited education

and no transferrable skills.[3] As a result, if the plaintiff is limited to light work only, and there are, in fact, no medium, unskilled jobs available which he can perform, then Rule 202.02 of the Medical-Vocational Guidelines ("Grid Rules") dictates a finding of "disabled."  20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.02.  This point is not disputed by the defendant.

Occupational evidence provided by a VE generally should be consistent with the occupational information provided by the DOT.   The ALJ has a duty to ask the VE to identify and explain any conflicts with the DOT.  *See* SSR 00-4p.  The relevant portion of SSR 00-4p reads as follows:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p.  Accordingly, the ALJ must elicit a reasonable explanation for any "apparent unresolved conflict" between the VE evidence and the DOT before relying on the VE to support a determination about whether the claimant can perform any work.  *See id.*  A VE's conflicting testimony can only be used if the ALJ finds that it is based on "other reliable publications" or the expert's own "experience in job placement or career counseling."  SSR 00-4p, 2000 WL 1898704 at *2; *see also Fisher v. Barnhart*, 181 Fed. Appx. 359, 365-66 (4th Cir. 2006) (Unpublished).

Nowhere does the defendant dispute that the VE's testimony, regarding available work, is, in fact, inconsistent with the demands of assembler and bench hand, as described

---

[3]  It appears that the ALJ actually left unresolved the issue of the transferability of the plaintiff's skills as not material to the determination.  (R. at 9.)

in the DOT. That point is essentially conceded. Instead, the defendant simply responds that the job of bench hand also included "hand packager," which is an unskilled medium job. *See* DOT 920.587-018; (R. at 310-11.) The defendant argues, therefore, that any error in describing the jobs was harmless.

It is true that the VE expressly included in testimony "hand ***packers***, hand sorters, hand cleaners, [and] hand trimmers." (R. at 310.) What is less clear, is whether he meant to identify the job of "hand ***packager***" described in DOT 920.587-018. As the plaintiff highlights, the VE expressly identified DOT Sections 729.684-054 and 520.384-010 as the relevant jobs and never mentioned DOT 920.587-018 (hand packager). Moreover, the VE used the job title "hand *packer*" versus the DOT title, "hand *packager*." What the VE intended by his testimony, therefore, is not clear to the Court. Any attempt by the defendant to argue that the plaintiff can perform work as a hand packager is a *post hoc* rationalization, which the Court declines to consider. *See Golembiewski v. Barnhart*, 322 F.3d 912, 915-16 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."); *Steel v. Barnhart*, 290 F.3d 936 (7th Cir. 2002) ("But regardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for her decision and confine our review to the reasons supplied by the ALJ.").

It may be easily concluded that the plaintiff can perform the unskilled, medium work of a hand packager, but it seems an overreach of the Court to so decide, especially in light of the VE's express reference to DOT Sections, neither of which include "hand packager." The case, therefore, is remanded for clarification by a vocational expert as to whether any jobs exist in significant numbers, which the plaintiff can perform, including but not limited to the vocation of hand packager.

## II.     The Plaintiff's Credibility

The plaintiff next contends that the ALJ failed to properly apply the prescribed analysis in considering the plaintiff's subjective complaints of pain.  As the plaintiff argues, federal regulations, 20 C.F.R. §§ 416.929(a) and 404.1529(a), provide the authoritative standard for the evaluation of pain in disability determinations.  *See Craig v. Chater*, 76 F.3d 585, 593 (4th Cir. 1996).  Under these regulations, "the determination of whether a person is disabled by pain or other symptoms is a two-step process."  *Id.* at 594.  First, "there must be objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.* at 591 (quotation and emphasis omitted).  This threshold test "does not . . . entail a determination of the 'intensity, persistence, or functionally limiting effect' of the claimant's asserted pain."  *Id.* at 594.  Second, and only after the threshold inquiry has been satisfied, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated."  *Id.* at 595.  When the ALJ fails to "expressly consider the threshold question" and instead proceeds "directly to considering the credibility of [the] subjective allegations of pain," remand is warranted.  *Id*. at 596.

It is critical to proceed through the steps in order, because "once objective medical evidence establishes a condition which could reasonably be expected to cause pain of the severity a claimant alleges, those allegations may not be discredited simply because they are not confirmed by objective evidence of the severity of the pain . . . ."  *Id.* at 593.  Said differently, once an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, he ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating  lens because the plaintiff's subjective allegations, at that point, are consistent with the objective expectations.

The plaintiff contends that while the ALJ attempted to make application of the *Craig* paradigm, he failed to consider nonmedical factors at step two.  Factors to be considered at the second step include: (1) claimant's statements about pain; (2) claimant's medical

8

history; (3) laboratory findings; (4) any objective medical evidence of pain; (5) claimant's daily activities; and (6) medical treatment to alleviate pain. See *Craig*, 76 F.3d at 595; 20 C.F.R. § 416.929(c). A claimant is not required to show objective medical evidence of the pain itself although objective evidence is relevant. *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir.1986); 20 C.F.R. § 416.929(c)(2).

The plaintiff specifically argues that substantial evidence did not support the ALJ's decision to reject the plaintiff's testimony concerning his inability to lift objects of any significant weight. The credibility determination in this regard is critical insofar as the plaintiff would be deemed disabled under the Grid Rule 202.02, as stated above, if he was incapable of lifting in excess of 25 pounds. The plaintiff argues that the ALJ ignored his testimony regarding daily activities – that he was "real weak" in his right arm, that he could not lift even a gallon of milk with that arm without the help of his non-dominant left hand "because I don't have the strength in my right arm," and that he had a "lot of difficulty" with pushing and pulling with that arm. (R. at 294-295.) The plaintiff complains that the ALJ focused on other activities of daily living, including caring for his dogs, washing coffee cups, folding towels, and going to his doctors' appointments, to church and occasionally out to eat (R. at 297-300), none of which require significant use of his dominant right arm and are entirely consistent with the plaintiff's testimony that he cannot even lift a five-pound gallon of milk with that arm.

A review of the ALJ's decision confirms that the plaintiff's summation is a fair one. Although he noted the plaintiff's testimony concerning the milk jug, the ALJ, in fact, focused on daily activities that do not appear to either corroborate or call into question the lifting limitations testified to by the plaintiff. (R. at 20.) In fact, the ALJ stated, "It is noteworthy that aside from a lifting limitation attributable to the claimant's shoulder injury, no additional limitations are identified." (R. at 20.) Of course, to the plaintiff, that is the whole issue – the extent of the lifting limitation.

As far as the Court can tell, the ALJ cites to no affirmative evidence that the plaintiff can lift between 25 and 50 pounds with any frequency, as required of medium work. *See* 20 C.F.R. § 404.1567(c). As the plaintiff contends, the ALJ principally recites medical evidence that the plaintiff's shoulder limitation is not as severe as alleged, generally. (R. at 21.) The ALJ cites Dr. Julian Adams who noted winging of the right scapula but found that a "thorough clinical examination of the right upper extremity showed no other neurological motor deficit." *Id*. The ALJ also cited Dr. W. Daniel Westerkam who noted that the plaintiff's reports of pain with overhead movement but found that the prescribed therapy "seem[ed] to be going well." *Id*. Lastly, the ALJ emphasized the determination of Dr. W. Alaric Van Dam that the plaintiff's upper extremities showed "good sensation and good motor testing in the bilateral uppers with a notable winging scapula on the right, worse with forward extension of the arms" but that Dr. Van Dam also found that the plaintiff did not report any significant pain on palpation of the region. *Id*. But, the ALJ also recounted Dr. Van Dam's conclusion that the plaintiff should be restricted to no more than 15 lbs of overhead weight. (R. at 22, 188-90, 192-93.) Lastly, the ALJ noted that the plaintiff's treating physician, Dr. Mark J. Leski, in February of 2004, found that the plaintiff could return to work but with limitations involving his right upper extremity. (R. at 22.)

Accordingly, the ALJ's rejection of the plaintiff's testimony that he could not lift significant weight was based upon 3 medical opinions not specifically inconsistent with that testimony and 2 medical opinions generally consistent with the same. Moreover, as stated, the daily activities discussed by the ALJ reflected no specific view of the plaintiff's ability to lift. All of this seems less than substantial evidence, at step two, to diminish the plaintiff's credibility, especially after already finding, at step one, that the plaintiff's shoulder injury could reasonably be expected to cause the symptoms alleged.

The ALJ seems principally compelled by the fact that none of the physicians concluded that the plaintiff could return to work. (See R. at 22.) The relevance of this observation, it seems, would be substantially neutered to the extent the plaintiff can perform

10

no more than light work and is, therefore, deemed disabled under the Grid Rules. All of the plaintiff's objections coalesce to this point and it is the one most compelling to the Court. The ALJ may have been generally persuaded that the plaintiff's symptomology was less severe than professed but he takes no specific care to explain the limits of the plaintiff's ability to lift. As the parties seem to concede that a disability determination under the Grid Rules hangs in the balance of this lifting requirement, the Court needs to understand more completely how the ALJ arrived at the determination that the plaintiff was capable of performing medium work.

This matter should be explored and more fully explained on remand.

For the reasons recited above, the Court need not address the plaintiff's third objection as to the ALJ's consideration of the plaintiff's treating physician other than to say that on remand all evidence relevant to the plaintiff's ability to lift should be considered. The Court would note that the ALJ treated Dr. Leski's opinion and gave reasons for diminishing it insofar as Dr. Leski opined, prior to the onset date of disability, that the plaintiff was not capable of working. (R. at 21.) The ALJ explained that this opinion was given prior to the alleged onset date and was further inconsistent with medical records of Dr. Leski after that date. *Id.* The Court believes that there was substantial evidence to so conclude. The ALJ did not, however, give any specifically defined weight to the ultimate opinion of Dr. Leski. Regardless, the Court finds that the whole record, to the extent it touches and concerns the plaintiff's ability to lift, should be revisited, including Dr. Leski's opinions.

If the ALJ concludes that the plaintiff's residual functional capacity should be modified based upon the plaintiff's ability to lift, then applicability of the Medical Vocational Guidelines should be renewed. This determination should also include a consideration of the transferability of the plaintiff's jobs skills, not originally considered in the ALJ's decision. (See R. at 22.)

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, the Court cannot conclude that the ALJ' s decision to deny benefits was supported by substantial evidence. It is recommended, for the foregoing reasons, that the Commissioner's decision be reversed and remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner for further proceedings as set forth above. *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

September 9, 2008
Greenville, South Carolina