**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| TONY E. HORNSBY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No.: 8:07-3474-PMD-BHH |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | **ORDER** |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

      This is an action brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of the Commissioner of Social Security's final decision, which denied Tony Hornsby's ("Hornsby" or "Plaintiff") claims for Disability Insurance Benefits ("DIB"). The record includes a Report and Recommendation ("R & R") of United States Magistrate Judge Bruce Howe Hendricks, made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a), recommending that the administrative law judge's ("ALJ") decision, which denied Plaintiff's claim for DIB in accordance with the Commissioner's final decision, be reversed and remanded. The Commissioner timely objected to the Magistrate Judge's recommendation. *See* 28 U.S.C. § 636(b)(1) (providing that party may object, in writing, to a Magistrate Judge's R & R within ten days after being served with a copy).

**BACKGROUND**

      Plaintiff is a fifty-nine year-old man with a tenth grade education and past work experience as an automatic door installer, meat cutter, and meat cutter supervisor. Plaintiff alleges that he became disabled on July 1, 2004, due to physical limitations caused by scapula damage, thoracic nerve damage, pain and weakness in his right arm, and anxiety.

Plaintiff was first injured while working on January 2, 2003, while lifting heavy objects in his occupation as an automatic door installer. On that date, he went to the emergency room complaining of neck pain. An x-ray was taken, and came back negative. The emergency room physician, Dr. Joseph Sobel, diagnosed Plaintiff with acute musculoskeletal neck pain. Plaintiff was given anti-inflammatory, muscle relaxant, and pain medications, and discharged.

In March of 2003, Plaintiff went to two separate visits to his family physician, Dr. Michael Harris, M.D., complaining of neck pain. Dr. Harris diagnosed Plaintiff with muscle strain and nerve pressure, and prescribed Plaintiff with anti-inflammatory and muscle relaxant medicines. Plaintiff underwent an MRI, which showed degenerative disc changes that were not significantly deforming.

In April 2003, Plaintiff visited Dr. Victoria Samuels, M.D., complaining of pain in his right arm. He was referred to a neurologist. He then went to see Dr. Julian Adams, M.D., complaining of neck pain, right arm pain, depression, anxiety, and weakness. Adams found no significant limitations in Plaintiff's memory, concentration, alertness, nerves, or reflexes. Plaintiff was diagnosed with winged scapula, a condition in which the shoulder blade is abnormally positioned. Plaintiff was prescribed prednisone and medrol.

In September 2003, Plaintiff was referred to Dr. Mark J. Leski, M.D. for treatment of his shoulder pain. Dr. Leski diagnosed Plaintiff with scapular stabilizer dysfunction, and recommended rehabilitation. Pursuant to Dr. Leski's recommendation, Plaintiff underwent physical therapy from September to October 2003. On October 15, Plaintiff returned to Dr. Leski and reported that he had seen no improvement from the rehabilitation. On October 21, pursuant to Dr. Leski's orders, Plaintiff underwent a electromyogram and nerve conduction study. The study showed a right long thoracic nerve injury, and Dr. Leski said it was doubtful Plaintiff would recover full function of his

shoulder. In November, Dr. Leski restricted Plaintiff to no heavy lifting and stated that it was doubtful that Plaintiff would recover the function of the nerve and muscle in his right shoulder. Plaintiff continued physical therapy, but in December Dr. Leski reported that Plaintiff had significant weakness in his right shoulder, discomfort with any type of lifting, and loss of biomechanical function. He further stated that Plaintiff was "not capable of working due to his injury." However, Dr. Leski remained optimistic that Plaintiff could regain the ability to work, and Plaintiff continued to undergo physical therapy, with mixed results. He continued to see Dr. Leski, with no dramatic changes in treatment.

In February 2004, Plaintiff was examined by Dr. Alaric van Dam, M.D., in connection with his claim for Workers' Compensation benefits. Plaintiff had claimed he had joint pain, blurry vision, anxiety, weakness, difficulty sleeping, and depression. Dr. van Dam found that Plaintiff did have shoulder pain, but that he was alert and able to move around normally. According to Dr. van Dam, Plaintiff would be able to hold down an occupation with "light duties" so long as he was not asked to lift more than 15 pounds with his right arm or do any sort of activity that required him to regularly lift his right arm over his head. In March 2004, Dr. van Dam stated that Plaintiff had a 15 percent impairment rating in his upper extremity. On August 12, 2004, Plaintiff filed a claim for social security disability benefits. Plaintiff claimed he was unable to work due to shoulder pain and weakness in his right arm. This claim was initially denied, but Plaintiff appealed this determination.

In January 2005, Plaintiff was examined by Dr. Bonnie Ramsey, M.D., a psychiatrist, at the request of the Commissioner. Plaintiff reported that he had never before been treated by a psychiatrist, although he had been prescribed Ativan by his family physician. He reported that he was having severe problems with anxiety and depression, which led to difficulty sleeping and an

3

inability to function in large crowds. Ramsey wrote that Plaintiff's psychiatric problems resulted in some moderate functional limitations, but that most of Plaintiff's limitations resulted from his physical problems. She diagnosed him with the GAF score of 60 to 70.[1]

In late January 2005, Lisa Klohn, Ph. D., a state agency psychologist, examined Plaintiff's records and determined that he had an affective disorder and an anxiety-related disorder which resulted in mild limitations on his daily activities, and moderate limitations on many occupational skills. However, she wrote that Plaintiff would be able to perform a variety of simple tasks that did not involve substantial contact with the general public.

Plaintiff revisited Dr. Harris in June 2005, reporting that he had applied for disability due to his shoulder and other physical pain. He said he was also suffering from anxiety and hypertension, but that the medications he was taking for both conditions were treating those conditions effectively. Also in June, a state agency physician reviewed Plaintiff's record and determined he was still capable of performing work with some limitations, and a state agency psychologist reviewed Plaintiff's record and came to the same conclusion.

In January 2006, Plaintiff was examined by John Schaberg, M.D., for complaints about abdominal pain. A colonoscopy showed internal hemorrhoids and polyps on Plaintiff's colon, which were biopsied and removed. Plaintiff was prescribed an anti-spasmodic to deal with the

---

[1] GAF scores range from 0-100. The higher the score, the greater an individual's ability to function and carry out activities of daily living. A GAF score of 51-61 indicates moderate symptoms (e.g., circumstantial speech and occasional panic attacks) or moderate difficulty in social or occupational functioning (e.g., no friends, unable to keep a job). A GAF score of 61-70 is less severe and indicates only that a person has "some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally function[s] pretty well, [and] has some meaningful interpersonal relationships." Diagnostic & Statistical Manual of Mental Disorders-Text Revision (DSM-IV-TR) (2000).

4

hemorrhoids. In February, Plaintiff returned for a follow-up, and was diagnosed as likely having irritable bowel syndrome, and was prescribed an anti-convulsant to deal with this condition.

On November 22, 2006, Plaintiff had a hearing before Administrative Law Judge Albert A. Reed ("the ALJ") to determine whether or not he was disabled. Plaintiff testified that he had no difficulty sitting, standing, or walking. However, Plaintiff also testified that he could hardly lift a gallon of milk with this right arm, and could not lift fifty pounds of weight using both arms. He stated that he largely stayed at home all day performing household chores and taking care of his dogs, but that he did, on occasion, go grocery shopping with his wife or go out to dinner with his family. He further testified that he took Aleve to help with his shoulder pain, and Ativan to help with his depression and anxiety, and to prevent panic attacks.

Vocational expert William Stewart ("the VE") also testified at the hearing as to Plaintiff's past relevant work experience, and testified that this experience gave Plaintiff skills, such as mechanical, clerical, supervisory, and customer service abilities, which would be transferable to other professions. The VE ultimately testified, when asked by the ALJ to assess a hypothetical individual of Plaintiff's age and Plaintiff's various limitations, that such a person could perform the jobs of assembler or bench hand, which included the occupations of hand packer, hand sorter, hand cleaner, and hand trimmer.

On March 6, 2007, the ALJ found that Plaintiff was not completely disabled and therefore not entitled to DIB. Plaintiff appealed this decision, but the Appeals Council denied Plaintiff's request for review. Accordingly, the ALJ's decision was the Commissioner's final determination of Plaintiff's disability status. The decision of the ALJ contained the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2008.

5

2. The claimant has not engaged in substantial gainful activity since July 1, 2004, the established onset date (20 CFR 404.1520(b) and 404.1571 *et seq*.).

3. The claimant has the following severe impairments: winging of the right scapula (with a long thoracic nerve palsy); and anxiety-related disorder (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to: perform work at the medium exertional level; is unable to climb using ladders, ropes or scaffolds; no overhead reaching with the right-dominant upper extremity; no pushing or pulling with the right upper extremity in excess of 15 pounds; no exposure to workplace hazards such as unprotected heights and dangerous machinery; due to anxiety is limited to simple, routine, unskilled work, with low stress which is definied as involving very few decision; and no on-going interaction with the public.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 28, 1949 and was 55 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education and work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

11. The claimant has not been under a disability, as defined in the Social Security

Act, from July 2004, through the date of this decision (20 CFR 404.1520(g)).

Plaintiff brought suit in this Court on October 18, 2007, alleging in his Complaint that Defendant had wrongfully denied him DIB in violation of the Social Security Act. Defendant filed an Answer to this Complaint on February 1, 2008. Plaintiff filed a Brief in support of his position on March 3. Defendant filed a Brief in support of his position on April 15, to which Plaintiff filed a Response Brief on April 30. The Magistrate Judge issued her R&R on September 9, 2008, recommending that the Commissioner's decision be reversed and remanded to the ALJ for further proceedings. Defendant filed his timely Objection to the Magistrate Judge's R&R on September 18.

## STANDARD OF REVIEW

### I.     Magistrate Judge's R & R

The Magistrate Judge makes only a recommendation to the court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 269 (1976). The court reviews *de novo* those portions of the R&R to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1). The court has reviewed the entire record, including the R&R and the Commissioner's objections. Pursuant to this review, the court concludes that the R&R correctly detailed the facts at issue and applied the correct principles of law. Accordingly, the court expressly adopts the R & R into this Order.

### II.    Commissioner's Final Determinations

The role of the federal judiciary in the administrative scheme established by the Social

Security Act is narrowly tailored "to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). Section 205(g) of the Act provides, "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The phrase "substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether there is substantial evidence, the reviewing court should not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original). The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (2004). This determination of a claimant's disability status involves the following five-step inquiry:

> whether (1) the claimant is engaged in substantial activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in Appendix I of 20 C.F.R. Part 404, subpart P; (4) the

>claimant can perform [his or] her past relevant work;
>and (5) the claimant can perform other specified types
>of work.

*Johnson v. Barnhart*, 434 F.3d 650, 654 n. 1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2005).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that a claimant could perform. *See Walls*, 296 F.3d at 290. This determination requires a consideration of "whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). If the claimant is found to have the ability to adjust to other work, the Commissioner will not find him disabled. 20 C.F.R. § 404.1520(g)(2).

## **DISCUSSION**

The Magistrate Judge recommended that this Court reverse the Commissioner's decision and remand the matter back to the ALJ for further proceedings. The Magistrate Judge made this recommendation on two grounds: (1) the VE's testimony at the hearing before the ALJ contained conflicting statements regarding the occupations Plaintiff could possibly perform; and (2) the ALJ failed to adequately explain his assessment of Plaintiff's credibility. Defendant filed timely objections to both of these recommendations, and asserts that this Court should decline to adopt the

Magistrate Judge's R&R and uphold the Commissioner's final decision.

**I.      Contradictions Between the VE's Testimony and Dictionary of Occupational Titles**

At the hearing, the ALJ specifically asked the VE if there were any unskilled medium exertional occupations which someone in Plaintiff's situation could perform. The VE responded in the affirmative, and testified that someone in Plaintiff's situation could perform the jobs of assembler and bench hand. Within the job description of bench hand were a number of occupations, including hand packers, hand sorters, hand cleaners, and hand trimmers.

Plaintiff claims that this testimony was inconsistent with the job descriptions given in the Dictionary of Occupational Titles ("DOT"). The job description for "assembler," as defined by the DOT, is defined as light, not medium, work. DOT 729.684-054. The job description for "bench hand," as defined by the DOT, is defined as skilled, not unskilled, work. DOT 520.384-010. Therefore, Plaintiff argued that the VE's testimony was fundamentally flawed and unreliable, and the ALJ was erroneous in relying upon it to conclude that Plaintiff could perform these jobs.

However, as Defendant notes, the VE's testimony was far more detailed and nuanced than simply citing to those jobs and saying that a hypothetical person with Plaintiff's age, background, and qualifications could perform them. The VE did explicitly acknowledge that many if not most of those positions did not fit under the description of medium exertion and unskilled, but stated that thousands of those jobs within the state of South Carolina did fall within those categories.

Therefore, a review of the hearing's transcript shows that while the VE cited to jobs that were not classified by the DOT as medium exertional, unskilled jobs, his testimony was specifically that there were subsets of these occupations that were medium exertional, unskilled positions, which a hypothetical person in Plaintiff's situation could perform. The question before the Court,

10

therefore, is whether it was erroneous for the ALJ to rely upon this testimony.

>SSR 00-4p provides that:
>
>Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency. Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p.

The Magistrate Judge recommended that this Court remand this matter back to the ALJ, because the ALJ failed to inquire about the inconsistency between the VE testimony and the DOT occupational definitions. The distinction between occupations that require light and medium exertion is significant in this case because of Plaintiff's advanced age, education level, and lack of transferable skills. As a result, the relevant rules provide that a finding that Plaintiff was only able to perform light exertional unskilled work would dictate a finding of disabled, and entitle Plaintiff to disability benefits. 20 C.F.R. pt. 404, subpt. P, app. 2, Rule 202.02. Therefore, in order to deny Plaintiff DIB, the ALJ had to find that Plaintiff was capable of performing work that required a medium level of exertion.

It is clear, then, that there is some discrepancy between the VE's characterizations of the positions of "assembler" and "bench hand" and the definitions of those categories in the DOT. SSR 00-4p provides quite explicitly that in such a case, the ALJ must specifically inquire as to the discrepancy, discern the basis for the VE's testimony, and ultimately make a determination as to the

11

accurate description of the position. Here, the VE did speak at length about how there was a sizeable minority of the bench hand positions that did, in fact, require medium exertion, and gave statistics as to the number of such positions in existence in the national and state job markets. However, at no point did the VE specifically say what he was basing his testimony upon. SSR 00-4p explicitly says that "[t]he adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information." In order to provide a reasonable basis for testimony which contradicts information in the DOT, a VE must specifically explain the basis for his or her testimony. *See, e.g.*, *Rogers v. Astrue*, 2009 WL 368386 at *3-*4 (10th Cir. Feb. 17, 2009) (holding that the ALJ had not ascertained a reasonable basis for the VE's testimony which contradicted the DOT where VE had not specified which documentation or placement experience he relied upon in giving such testimony). Here, the VE never provided the ALJ with the basis of his testimony that jobs in either category were actually medium-exertion, unskilled positions, despite the fact that they were not formally classified as such under the DOT.

Accordingly, it was error under SSR 00-4p for the ALJ to rely upon this testimony instead of the DOT definitions of the position without explicitly inquiring as to the basis of the VE's testimony. Therefore, the Magistrate Judge was correct in recommending that this Court reverse the Commissioner's decision and remand the matter back to the ALJ to specifically determine what basis the VE had to provide information that contradicted the DOT before deciding that these positions exist in the economy.

Defendant also asserts, in his objections, that the VE's testimony regarding the positions of "bench hand" and "assembler" was irrelevant and harmless error, because the VE also testified that

Plaintiff could get a medium exertional unskilled position as a hand packager, which is definited by the DOT as medium and unskilled. *See, e.g.*, *Rogers*, 2009 WL 368386 at *4 (upholding Commissioner's decision despite other discrepancies in definitions of position between VE testimony and DOT because VE testified that claimant could find work as a hand packager). However, this contention is in error, and does not give this Court a basis for upholding the decision of the Commissioner.

The VE did testify that, among the jobs that fall under the "bench hand" category of which Plaintiff was capable of performing, someone in Plaintiff's situation could perform the job of a "hand packer." Defendant has asserted that the VE was referring to the position of "hand packager." A "hand packager" is defined by the DOT as requiring medium exertion and being an unskilled position, and is defined in DOT 920.587-018. The DOT contains no entry or definition for the position of "hand packer." In his testimony, the VE referred to several specific provisions of the DOT, DOT 729.684-054 ("subassembler") and DOT 520.384-010 ("bench hand (bakery products)"), but made no reference to a specific section for "hand packer."

The Court rejects Defendant's assertion that the VE was clearly talking about the position of "hand packager" when he said "hand packer." The definition of occupations and occupational requirements and duties for DIB purposes is an extraordinarily specific and technical field, and is not an arena where a Court should, in the absence of overwhelming evidence to the contrary, assume that a VE meant something other than what he said. In this case, the VE never used the term "hand packager," did not give a description of the requirements and duties of a "hand packer" so that this Court could compare those with the DOT definition of "hand packager," or use the relevant DOT number that corresponds with the "hand packager" occupation. Therefore, this Court may not leap

to the assumption that the VE was testifying that someone in Plaintiff's position could find medium unskilled work as a hand packager.

Accordingly, this Court adopts the Magistrate Judge's recommendation, and remands this matter back to the ALJ for clarification by a vocational expert as to whether or not someone in Plaintiff's situation may seek medium, unskilled work, including but not limited to employment as a hand packager.

## II.     The ALJ's Assessment of Plaintiff's Credibility

The Court next turns to Plaintiff's contention that the ALJ was erroneous in his assessment of Plaintiff's credibility as to his description of his conditions and the pain and limitations they caused him.

Plaintiff alleges that the ALJ failed to properly assess his credibility. The Magistrate Judge agreed, and found that the ALJ had not adequately explained how he came to his conclusion that Plaintiff's claims about his symptoms and his pain were not credible. The ALJ specifically stated that:

> After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms not entirely credible.

(Rec. at 20.)

The ALJ then goes on to discuss a number of medical opinions regarding the severity of Plaintiff's conditions. Dr. Harris, in a note dated June 1, 2005, stated that Plaintiff "is applying for disability because of a shoulder injury, winged scapula, and other joint pains. He has trouble finding work that pays what he thinks he is worth. He has basically retired from the meat cutting industry." Dr. Ramsey's psychiatric examination acknowledged that Plaintiff was being treated for anxiety

14

symptoms, and was complaining of anxiety attacks, but that his GAF score was still in the 60-70 range, which is defined as "mild symptoms." While Plaintiff stated that he had suffered from anxiety and depression for a significant period of time, he acknowledged that he had never before sought treatment from a psychiatrist for these conditions. Plaintiff was prescribed Ativan, which was later acknowledged to be working well.

The ALJ went on to note that several physicians had examined Plaintiff during 2003, and while all had acknowledged that he had scapular winging which significantly inhibited what he could do with his right upper extremity, they were treating the condition and referring him for physical therapy. The ALJ noted that Dr. Van Dam examined Plaintiff in February 2004, and noted that while he did not believe Plaintiff could improve his condition through physical therapy, he was fully capable of returning to work so long as his occupation did not require him to use his right arm in an overhead capacity. Dr. Van Dam stated that Plaintiff "could go back to work, limiting some of the overhead use of his right arm, secondary to weakness and not to do any repetitive overhead activity. I would restrict the overhead weight to 15 pounds for the arm." (Rec. at 22.)

The determination of whether a person is disabled by pain is a two-step process involving a finding of the credibility of the individual's statements about symptoms. SSR 96-7p, 1996 WL 374186, at *1. First, "there must be objective medical evidence establishing some condition that could reasonably be expected to produce the pain alleged." *Craig v. Chater*, 76 F.3d 585, 592 (4th Cir. 1996) (citing *Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir. 1986)). Second, and only after the threshold obligation has been met, "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated." *Craig*, 76 F.3d at 595 (citing 20 C.F.R. §§ 416.929(b) & 404.1529(b)). At the first step, "the pain claimed is not directly at issue; the

focus is instead on establishing a determinable underlying impairment . . . which could reasonably be expected to be the cause of the disabling pain asserted by the claimant." *Craig*, 76, F.3d at 594. After "an ALJ concludes that an impairment could reasonably be expected to produce the pain alleged, [at the second step of the credibility inquiry] she ought to view any inconsistency or defect in the plaintiff's subjective testimony through a more discriminating lens because the plaintiff's allegations . . . are consistent with the objective expectations." *Bragg v. Astrue*, 2008 WL 348030, at *5 (D.S.C. 2008).

In the instant case, the ALJ correctly determined that Plaintiff's medical impairments could reasonably be expected to cause the claimed symptoms. The ALJ then turned to the issue of whether Plaintiff's claims of disability were credible, and the ALJ undertook a credibility analysis, giving several pages of explanatory support for his conclusion that Plaintiff's claims about his symptoms and conditions were not entirely credible. The Magistrate Judge recommended that this Court find that the ALJ's credibility analysis was insufficient, because it was too general and not specifically targeted to the issue of Plaintiff's ability to lift a sufficient amount of weight, which was the key issue in the determination of whether or not Plaintiff was able to perform an occupation that required a medium level of exertion.

While the ALJ gave a lengthy recitation of medical evidence that called Plaintiff's general claims about his condition into question, the ALJ failed to specifically explain the basis for his findings. The evidence marshaled by the ALJ in support of his credibility determination consists of numerous reports that stated that Plaintiff's condition was not disabling, or not as debilitating as Plaintiff claimed. There were also several opinions that Plaintiff could continue working with some moderate limitations. This, along with Plaintiff's ability to independently perform many everyday

activities, seemed to convince the ALJ to conclude "I am not persuaded that the claimant is incapable of performing all work." (Rec. at 22.) However, the question was not Plaintiff's capability to perform any kind of work, it was whether or not Plaintiff was capable of performing unskilled work of medium exertion. In this context, medium exertional work is defined as work which requires the worker to lift between 25 and 50 pounds. 20 C.F.R. § 1567(c). While it is possible that the information cited by the ALJ could support a decision that Plaintiff was capable of performing unskilled work which required some frequency of lifting between 25 and 50 pounds of weight, the ALJ must explicitly explain the basis of this conclusion, which he has failed to do.

Accordingly, this Court adopts the Magistrate Judge's recommendation to remand this matter back to the ALJ for further proceedings so that the ALJ can more fully give a specific explanation for finding that Plaintiff's account of his limitations and conditions was less than credible.

### III.    Plaintiff's Claim that the ALJ Failed to Give Proper Deference to the Opinion of Plaintiff's Treating Physician

Finally, this Court turns to Plaintiff's contention that the ALJ erred in not giving the proper amount of deference to the medical opinion of his treating physician. Plaintiff claims that the ALJ should have given more deference to the medical opinion of Dr. Leski. The Magistrate Judge did not make a recommendation on this claim, as part of the recommendation as to Plaintiff's previous claim was that the ALJ should consider all relevant evidence on remand, and give a more specific account for his failure to find Plaintiff's testimony entirely credible. Since the Court has already remanded this matter back to the ALJ for reconsideration, it would be redundant to consider Plaintiff's claim regarding the deference given to Dr. Leski's opinion.

However, in the interest of clarity, the Court reiterates the Magistrate Judge's handling of

17

the issue. Specifically, this Court concurs that the ALJ's decision to substantially discount Dr. Leski's opinions, where opinions given by Dr. Leski as to Plaintiff's condition, symptoms, and ability to work which were given before the alleged disability onset date of July 1, 2004 were seemingly contradicted by his later opinions, were supported by substantial evidence and need not necessarily be reconsidered on remand. Dr. Leski's opinion should be given a specific account, though, and should be given some consideration in the overall examination into the credibility of Plaintiff's claims.

## CONCLUSION

Based upon the foregoing and after a careful examination of the record as a whole, this court concludes that the ALJ's decision to deny benefits to Plaintiff was not supported by the correct application of the law. It is therefore **ORDERED**, for the foregoing reasons, that the Commissioner's denial of benefits is **REVERSED**, and the matter is **REMANDED** to the Commissioner for further proceedings consistent with this Order.

**AND IT IS SO ORDERED.**

_____
PATRICK MICHAEL DUFFY
United States District Judge

**Charleston, South Carolina**
**March 30, 2009**